UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF NEW YORK

In re:

JENNIFER C. KROHN,

                        *Debtor*.

Case No. 24-10644
Chapter 7

APPEARANCES:

James F. Selbach, Esq.
Selbach Law Offices, P.C.
*Attorney for Debtor*
8809 Daylight Drive
Liverpool, New York 13090

Jacquelyn A. DiCicco, Esq.
Jonathan M. Robbin, Esq.
J. Robbin Law
*Attorneys for Creditor, LVNV Funding, LLC*
200 Business Park Drive, Suite 103
Armonk, New York 10504

Robert E. Littlefield, Jr., United States Bankruptcy Judge

## MEMORANDUM DECISION & ORDER

Currently before the Court is a motion brought by the Debtor for a determination that LVNV Funding, LLC (the "Creditor") willfully violated the automatic stay (the "Motion"). The Court has jurisdiction via 28 U.S.C. §§ 157(a), (b)(1), (b)(2)(A) and 1334(b).[1] Venue is proper pursuant to 28 U.S.C. § 1409(a).

---

[1] Unless otherwise indicated, all chapter and section references are to the United States Bankruptcy Code, 11 U.S.C. §§ 101–1532 (2025) ("Bankruptcy Code").

-1-

## FACTS

On November 21, 2024, the Debtor and the Creditor submitted a joint stipulation of facts (the "Joint Stipulation") giving rise to this action (ECF No. 66). Those stipulated facts are incorporated herein.

Prior to the filing of this bankruptcy, the Creditor initiated a collection action against the Debtor in state court (the "Collection Action"). (ECF No. 66 at ¶ 1); *see also LVNV Funding LLC v. Jennifer C. Krohn*, Index No. EF2023927 (N.Y. Sup. Ct., Saratoga Cnty. 2023). On March 18, 2024, the state court granted a default judgment to the Creditor. (ECF No. 66 at ¶¶ 2–3). On May 1, 2024, the state court issued an income execution against the Debtor's wages. (ECF No. 66 at ¶ 5). Later that day, "[Pressler, Felt & Warshaw, LLP], on behalf of [the Creditor], requested that the Saratoga County Sheriff's Office . . . serve Debtor's employer, Saratoga Hospital, with the [income execution]." (ECF No. 66 at ¶ 6).

On June 7, 2024, the Debtor filed this Chapter 7 bankruptcy case. (ECF No. 1). That same day, the Creditor received notice of the bankruptcy from the Bankruptcy Noticing Center.[2] (ECF No. 9). On June 13, 2024, counsel for the Creditor notified Saratoga Hospital and Saratoga County Sheriff's Office (the "Sheriff's Office") about the bankruptcy and indicated the need to cease collection activity; counsel for the Debtor was also notified. (ECF No. 66 at ¶ 9; ECF No. 38-1 at Ex. A). That same day, the Sheriff's Office sent a letter to Saratoga Hospital to stop the execution. (ECF No. 66 at ¶ 16). Thereafter[3], the Sheriff's Office informed counsel for the Creditor that "it had ceased all collection activity and returned the [income execution] as unsatisfied due to Debtor's bankruptcy filing." (ECF No. 66 at ¶ 12; ECF No. 38-1 at Ex. B).

---

[2] Of note is the fact that June 7, 2024, was a Friday and the electronic notice to the Creditor's counsel was sent at approximately 7:35 p.m. (ECF No. 9 at 4).

[3] The letter from the Sheriff's Office is stamped received by counsel for the Creditor on June 25, 2024, but the letter itself is not dated. (ECF No. 38-1 at Ex. B). The income execution was stamped as "unsatisfied" on June 19, 2024. *Id.*

In early July 2024[4], the Debtor's wages were garnished in the amount of $425.76 and sent to the Sheriff's Office pursuant to the income execution. (ECF No. 66 at ¶¶ 13, 16). The Motion was filed on July 9, 2024. (ECF No. 22). The Debtor made no attempt to contact the Creditor or the Creditor's counsel prior to filing the Motion. (ECF No. 66 at ¶¶ 14–15). The Sheriff's Office returned the funds to the Debtor in August; there were no other executions against the Debtor's wages. (ECF No. 66 at ¶ 16, 19).

On July 25, 2024, the Creditor filed opposition to the Motion. (ECF No. 38). On July 31, 2024, the Court held a hearing on the Motion and set a schedule for the parties to file supplemental briefs. (ECF No. 39). On August 2, 2024, the Debtor filed a memorandum of law in support of the Motion. (ECF No. 40). The Creditor filed a response on August 21, 2024. (ECF No. 53). On September 11, 2024, the Court held another hearing on the Motion and requested the parties prepare a stipulated set of facts. (ECF No. 55). As mentioned previously, said stipulation was filed on November 21, 2024. (ECF No. 66). On December 11, 2024, the Court held a final hearing on the Motion and placed the matter on reserve. (ECF No. 67).

## ARGUMENTS

The Debtor argues the post-filing garnishment of her wages pursuant to the income execution constituted a violation of the automatic stay. That the Creditor reached out to the Sheriff's Office to stop the execution is insufficient as "[t]he duty to make sure that the deductions had stopped, and any funds were returned to the debtor . . . was exclusively [the Creditor's]." (ECF No. 40 at 1). The Debtor further avers that the Creditor, despite not having ever received the

---

[4] The stipulation by and between the parties indicates that the Debtor's wages were garnished on July 16, 2024. (ECF No. 66 at ¶ 13). Considering the Motion was made on July 9, 2024, the date is clearly erroneous. According to the Motion, the garnishment occurred "[o]n or about July 3, 2024" and counsel for the Debtor indicated that the garnishment occurred on July 8, 2024, at the July 31, 2024, hearing. (ECF No. 22 at ¶ 9; ECF No. 39 at 3:30).

-3-

garnished funds, should have advanced $425.76 to the Debtor pending the return of funds by the Sheriff's Office. (ECF No. 31 at 7:55–8:10; ECF No. 40 at 5–6).

In opposition, the Creditor argues that it did not willfully violate the automatic stay which is a condition precedent to sanctions under § 362(k). The Creditor argues that it acted reasonably and promptly to cease the income execution when the bankruptcy was filed and did the same when it first learned of the improper garnishment. (ECF Nos. 38, 53). As to the advancement of funds, the Creditor posits that it is under no obligation to do so as it was never in receipt of the funds. (ECF No. 53).

## DISCUSSION

As Bankruptcy Judge Carla E. Craig rightly pointed out, "[a] motion for sanctions pursuant to § 362(k) should not be the opening salvo in response to a violation of the automatic stay . . . ." *In re Leiba*, 529 B.R. 501, 507 (Bankr. E.D.N.Y. 2015). While there is no requirement to do so, it would have been reasonable for the Debtor to reach out to the Creditor prior to filing the Motion. Both sides appeared to have worked cooperatively at each step in this process, and presumably would have done so without court intervention. This, perhaps, would have saved time and resources for all involved. With that in mind, the Court turns to the issues raised in the Motion.

### I.  Violation of the Automatic Stay

These particular issues concerning the automatic stay are ones of first impression for the Court. According to the Bankruptcy Code, "an individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages." 11 U.S.C. § 362(k)(1). Paramount to a finding that § 362(k) applies is a finding of willfulness on the part of the purported violator.

"'Willful' in the context of § 362(k) means 'any deliberate act taken in violation of the stay, which the violator knows to be in existence.'" *In re Leiba*, 529 B.R. 501, 507 (Bankr. E.D.N.Y. 2015) (quoting *In re Crysen/Monetnay Energy Co.*, 902 F.2d 1098 (2d Cir. 1990)). "Further, '[a] failure to act by a creditor . . ., where the creditor had knowledge of the bankruptcy filing, may likewise be a violation of the automatic stay.'" *In re Voll*, Case No. 13-31058, 2013 Bankr. LEXIS 4723, at *6 (Bankr. N.D.N.Y. Nov. 6, 2013) (quoting *In re Parry*, 328 B.R. 655, 658 (Bankr. E.D.N.Y. 2005)).

"[U]pon receiving actual notice of the commencement of a bankruptcy case, a creditor has an affirmative duty under § 362 to take the necessary steps to discontinue its collection activities against the debtor." *Sucre v. MIC Leasing Corp. (In re Sucre)*, 226 B.R. 340, 347 (Bankr. S.D.N.Y. 1998). "[C]reditors must be proactive in reversing collection measures that they have put in place against a debtor pre-petition." *In re Voll*, 2013 Bankr. LEXIS 4723, at *5.

> [O]nce a creditor has put the wheels of collection in motion against a judgment debtor, upon learning of the filing of a bankruptcy by that debtor, the creditor must insure that the wheels of collection come to an immediate halt. Insuring that will happen requires more than simply notifying various types of collectors . . . . There must be some degree of reasonable follow-up whereby the creditor is assured that the collection activity has ceased.

*In re Schultz*, Case No. 07-64144, 2009 Bankr. LEXIS 2645, at *13 (Bankr. N.D.N.Y. Feb. 20, 2009).

Here, the Court determines that the Creditor was proactive in its efforts to cease collection on the income execution. Shortly after receiving notice of the bankruptcy, the Creditor mailed a letter to Saratoga Hospital, the Sheriff's Office and counsel for the Debtor indicating that "immediate steps should be taken . . . to prevent any further deductions from the salary earnings of [the Debtor]." (ECF No. 38-1 at Ex. A). Thereafter, the Sheriff's Office notified the Creditor "that it had ceased all collection activity and returned the [income execution] as unsatisfied . . . ."

(ECF No. 66 at ¶ 12). This was sufficient to create an assurance "that the collection activity had ceased" and negated the need for an additional follow-up. *In re Schultz*, 2009 Bankr. LEXUS 2645, at *13.

Though Saratoga Hospital did garnish the Debtor's wages in contradiction of the automatic stay, it is improper to ascribe blame to the Creditor in this case. The Creditor acted quickly upon receiving notice—in the form of the Motion—that the income execution had not been successfully stopped. After receiving the Motion, the Creditor called the Sheriff's Office to resolve the situation, at which time the Sheriff's Office indicated that it would return the payment to the Debtor in August and would write another letter to Saratoga Hospital. (ECF No. 38 at 2). As such, the wage garnishment was not a willful act of the Creditor and does not create a cause of action under § 362(k).

The Debtor relies upon three cases to support her argument that the Creditor's acts were insufficient to exonerate itself: *In re Voll*, *In re Schultz* and *In re Parry*. (ECF No. 40); *In re Voll*, 2013 Bankr. LEXIS 4723; *In re Schultz*, 2009 Bankr. LEXIS 2645; *In re Parry*, 328 B.R. 655. However, these cases are factually distinguishable from the present matter.

First, Judge Cangilos-Ruiz specifically noted in *In re Voll* that she was not resolving the issue that is currently before this Court: "[t]he Court does not decide whether the Department would be liable if Debtor's employer had continued to garnish Debtor's wages after the Department had promptly and decidedly communicated instructions to the appropriate point person to terminate the garnishment. That issue is not before the court." *Id.* at note 8. This is the exact scenario here where the Creditor promptly notified the Sheriff's Office about the bankruptcy and need to terminate the income execution, which was followed up shortly after by confirmation from the Sheriff's Office.

Second, *In re Schultz* dealt with a creditor who sent a letter to cease garnishments to the wrong county sheriff, and did not realize the mistake until the § 362(k) motion was made. *In re Schultz*, 2009 Bankr. LEXIS 2645, at *3–4. Judge Gerling rightly concluded that the creditor should have followed up on its letter, noting "if [the creditor] had followed up with Onondaga County Sheriff'[s] Office within a relatively short time after notifying it to terminate the income execution, its initial error would have been uncovered . . . ." *Id.* at *16. Here, the Creditor received confirmation from the Sheriff's Office shortly after requesting the garnishments cease and therefore satisfying the Creditor's obligation to follow up.

Third, the court in *In re Parry* found a stay violation where the creditor sent a general release letter to a third party but failed to follow up and confirm that the letter had been acted upon. *In re Parry*, 328 B.R. at 659. What's more, the creditor ignored subsequent letters from the debtor indicating that the liens were still in place and only rectified the situation when faced with the threat of contempt. *Id.* at 657. The Creditor in this case first learned of the garnishment by way of the Motion.[5] Rather than sitting idly, the Creditor quickly began working to remedy the situation.

For these reasons, the Court finds the present matter to be distinguishable from the case law provided.

II.     **Advancement of Funds**

As to the Debtor's argument that the Creditor was obligated to advance funds in the amount garnished pending resolution of the matter, the Court finds it unpersuasive. "At a minimum, when a creditor acts in violation of the automatic stay, said party is ordinarily required to turn over any property it acquires to the debtor's estate." *Burley v. Am. Gas & Oil Investors (In re Heafitz)*, 85 B.R. 274, 281 (Bankr. S.D.N.Y. 1988) (citing *United States on Behalf of IRS v. Norton*, 717 F.2d

---

[5] *See, supra,* at 4.

767, 775 (3d Cir. 1983)). Here, the Creditor never acquired any property as it was held exclusively by the Sheriff's Office. The Debtor cites no authority in her pleadings establishing a duty to advance funds. (*See* ECF Nos. 22, 40). Rather, counsel for the Debtor merely indicated on the record that it is a common occurrence in his practice. (ECF No. 31 at 7:55–8:10). The Court is not persuaded to impose such an obligation upon the Creditor.

## CONCLUSION

The Creditor in this case acted properly by ceasing the income execution, obtaining sufficient confirmation of same and responding swiftly to subsequent issues that arose. The Court further declines the Debtor's invitation to extend § 362 so as to require the Creditor to advance funds when none were received. Now, for the reasons stated herein, it is hereby

**ORDERED**, that the Motion is denied.

Dated: March 28, 2025
Albany, New York

/s/ Robert E. Littlefield, Jr.
Robert E. Littlefield, Jr.
United States Bankruptcy Judge